WALTHERS v. THE MISSOURI PACIFIC RAILWAY COMPANY, *Appellant.*

1. **Railroads:** KILLING STOCK; ORDER OF PROOF. In an action under the double damage act for killing stock, evidence offered by the plaintiff of the condition of the fencing at the point where the stock was killed, and which also furnished circumstances from which a reasonable inference could be drawn that such stock had there entered upon the railroad track; *Held,* admissible and properly submitted to the jury; *Held,* also, that proof of the condition of the fencing at a particular point was, in the discretion of the court, properly admitted before proof, or an offer to prove, that such stock entered upon the railroad at that point.

2. —— : —— : FENCES. Where a railroad company erects and uses diligent effort to maintain its fences, but strangers throw them down, it will not be liable for the killing of stock which enter upon its track through the breach.

*Appeal from Cole Circuit Court.*—HON. E. L. EDWARDS, Judge.

REVERSED.

*Thomas J. Portis* and *Smith & Krauthoff* for appellant.

*M. J. Leaming* and *Edwards & Davison* for respondent.

WINSLOW, C.—This action was originally commenced before a justice of the peace, in Cole county, Missouri, under the double damage act, for killing stock belonging to

plaintiff. There was a judgment by default before the justice, an appeal to the circuit court, where there was a trial by jury, which resulted in a verdict for plaintiff for $100, which was doubled by the court, and judgment rendered against defendant thereon for $200. To reverse this judgment, defendant brings the case here by appeal. Many questions are made on the record as to the sufficiency of the complaint, the jurisdiction of the justice, etc., but, since the recent numerous decisions of this court on these points, counsel for appellant have wisely abandoned them. The only questions now urged grow out of the introduction of testimony, and the action of the court on the instructions.

Plaintiff testified in his own behalf, that he was owner of the cows sued for, and that they were killed on defendant's track, at a point where there were cultivated fields on both sides of said railroad, and that he resided in Liberty township, Cole county; the fence was not more than two feet high where the cows were killed, and along the lane, east of where they were killed, about a half a mile, the fence was not more than four or five rails high; the cows were killed dead, and were appraised at $100; I saw tracks on the railroad near where they were killed. On cross-examination, he said the animals were killed thirty or forty yards east of the Moreau bridge; and that he did not know of a place near where they were killed, where the fencing was often thrown down by persons going through. His other witnesses made similar statements as to this place in the fence.

John Walthers testified: I saw the cows. The Pacific railroad killed them—three head. It is cultivated fields on both sides of the railroad there. I think $40 per head is reasonable for the cows. The fence is bad where the animals were killed. The fence was not more than two or three feet high. I saw tracks on the railroad. We could not see any tracks east of where the cows were killed. The weeds and grass were very thick.

Geo. A. Walthers testified: I know these cows; two

cows and one heifer. I saw them on the railroad; saw their tracks on the railroad. Two were killed dead, the other died in about an hour after. It is cultivated fields on both sides of the railroad where the cows were killed. The fence is poor, many rails are rotten. Fence is sometimes three, four, five, six and sometimes seven rails high. The cows were worth $40 each.

This was all of plaintiff's evidence.

Defendant introduced George Coleman, who said: I am now and was when the cattle were killed, foreman on this section where they were killed. They got on the railroad track ten rods east of the Moreau bridge. The railroad fence was down on both sides, thrown down by some one that night. The farmers on the north and on the south side of the railroad cross there on mules and horses so as to cut off some distance, and they always leave the fence down. My men put that fence up five times a week sometimes. We always put it up good when we found it down, without any delay. I, with my men, put this fence up good the morning before these cattle were killed. The morning the cattle were killed I came down to them. I then went to the place where people throw the railroad fence down. It was down again. I tracked these cattle right into this gap in the fence. Some fresh cow-dung was on the rails where they stepped over them. I then tracked them from the gap straight to where they were killed. I also saw where they had grazed along up to where they were killed. I put this fence up again.

F. Hardwick testified: I work on the section where the cattle were killed. I remember where they were killed. We put the fence up good at a place near Moreau bridge the morning before these cattle were killed. I saw the tracks where the cattle came in, about two telegraph poles from Moreau river. The fence is often down there. We often find it down, and always put it up when we find it down. It was down when we came to look at the cattle. We put it up good the morning before.

On this evidence the court instructed the jury for plaintiff as follows:

1. If the jury find from the evidence that plaintiff was, on or about the 2nd day of August, 1879, the owner of the three cows mentioned in the complaint, and that said cows got on the road of defendant where the same runs through, along or adjoining an inclosed or cultivated field, and that defendant did not have erected a good and substantial fence on the sides of its railroad, of the height of at least five feet, or have then and there cattle-guards at road-crossings at such points where said railroad passes said cultivated field sufficient to prevent cattle from crossing; that said cows were killed at the time aforesaid by defendant's engine or train of cars, and that the same was done in Liberty township, in Cole county; then the jury will find for plaintiff and assess his damages at whatever sum they may believe he has sustained by reason of the killing, not to exceed the amount claimed.

And refused to instruct the jury for defendant as follows—the first asked being in the nature of a demurrer to the evidence:

2. If the jury believe from the evidence that plaintiff's cattle got upon defendant's right of way in consequence of the fence belonging to defendant having been thrown or otherwise taken down at the point where said cattle got upon defendant's right of way, and that defendant's servants put the fence up at said point whenever they found it was down, and that defendant's servants had put up the fence at such point the morning before the said animals were killed, then defendant is not liable, and this, although the jury may believe from the evidence that defendant's fence was not lawful at other places, at or near where said animals were killed.

We do not think the trial court erred in admitting plaintiff's testimony under the complaint; nor in refusing defendant's first instruction, to the effect that under the pleadings and evidence

1. RAILROADS: killing stock: order of proof.

plaintiff was not entitled to recover. Plaintiff testified positively that the "cows were killed on defendant's track at a point where there were cultivated fields on both sides of said railroad." John Walthers said "It is cultivated fields on both sides of the railroad there," meaning where he saw the stock dead. Geo. A. Walthers said: "It is cultivated fields on both sides of the railroad where the cows were killed." Other evidence proves clearly that the fencing was down and in bad condition at the point designated by these witnesses. This, and other evidence shown by the record, tended to sustain the complaint, and was sufficient to justify the submission of the case to the jury. There was not an entire failure of proof.

But counsel insist, and objected to the introduction of the evidence on the ground that plaintiff should not have been permitted to offer any evidence of the condition of the fencing at the point in controversy, without first establishing or offering to establish that the animals entered the right of way at that point. Plaintiff offered no direct and positive evidence to this effect, but the evidence objected to furnished strong circumstances from which the jury might reasonably infer that such was the fact. The order in which evidence shall be given to the jury is largely within the discretion of the trial court; and we cannot see that there was any abuse of that discretion in this case. *Powell v. Railroad Co.*, 35 Mo. 457; *State v. Daubert*, 42 Mo. 239; *Cross v. Williams*, 72 Mo. 577; *Russell v. Berkstresser*, 77 Mo. 417. Nor can it avail that defendant's evidence was positive to the contrary; for that circumstance, at the most, only called for a rule, not applicable here, to the effect that it should be given more weight. *Sullivan v. Railroad Co.*, 72 Mo 195. Besides, defendant's evidence was very little less positive than plaintiff's, as will be seen on examination.

The court erred in refusing defendant's second instruction. It has long been settled in this State that under the double damage section of the statute, the plaintiff must allege and prove that his

_____: _____:

fences.

stock got upon the railroad track at a point where the company was bound to fence; and, failing in this, there could be no recovery.  *Cecil v. Railroad Co.*, 47 Mo. 246 ; *Clardy v. Railroad Co.*, 73 Mo. 576.   Plaintiff's evidence tended to establish these facts, and was sufficient to justify the instruction given for him, and the submission of his case to the jury.   But the rule is equally established, as concisely stated by Hough, J., in *Clardy v. Railroad Co.*, 73 Mo. 578, and Sherwood, C. J., in *Case v. Railroad Co.*, 75 Mo. 670, that:   "After fences have once been erected as required by law, the company is only liable for a negligent failure to maintain such fences, and it is, therefore, entitled to a reasonable time in which to make repairs, after having knowledge of a defect therein, or after the period has elapsed, in which, by the exercise of reasonable diligence, it could have had knowledge of such defect.   Shearman & Redfield on Neg., § 459, and cases there cited."   *Clardy v. Railroad Co.*, 73 Mo. 576; *Case v. Railroad Co.*, 75 Mo. 668.

Now, the defendant's uncontradicted evidence plainly tended to show that at the point where plaintiff's stock went upon the track, it had erected and diligently maintained lawful fences, down to the very day of the accident; that neighbors passing on horseback threw the fencing down, for their own convenience, as they were in the constant habit of doing, and that in consequence thereof, plaintiff's stock got upon the track and were killed.   It was the purpose of defendant's second instruction to submit these facts to the jury, and under the evidence and the cases above cited, it should have been given.   If the court was not satisfied with its form, it should have put it in proper form, and submitted the defense to the jury.

The judgment should be reversed and the cause remanded.   All concur.

*A motion for rehearing was overruled.*