Kraxberger v. Roiter.

KRAXBERGER V. ROITER, *Plaintiff in Error.*

1. **Practice in Supreme Court:** EVIDENCE. The action of the trial court, in refusing to allow a witness to answer questions, cannot be reviewed on appeal where the record does not disclose that any answer the witness might make, responsive to the questions, would be material evidence in the case.

2. **Breach of Promise of Marriage:** RESCISSION OF CONTRACT. In an action to recover damages for a breach of promise of marriage, defendant admitted the engagement to marry and his refusal to perform the contract, but relied for a defence upon the act of the plaintiff in returning to him the engagement ring after he told her he no longer loved her, but loved another, and would not marry her; *held,* that the return of the engagement ring did not, under the circumstances, constitute an agreement on her part to rescind the contract.

*Error to Morgan Circuit Court.*—HON. E. L. EDWARDS, Judge.

AFFIRMED.

*A. W. Anthony* for plaintiff in error.

(1) The first instruction given for the defence, considered in the light of the evidence, was erroneous. It puts the case upon the ground that, if defendant *notified* plaintiff that he could not, or would not, comply with his promise, the defendant was liable. The mutual consent to a rescission need not be expressed by words, being valid if implied. *Wheeden v. Fiske*, 50 N. H. 125; *Fine v. Rogers*, 15 Mo. 315; *Jones v. Neale*, 2 Pat. & H. 339. (2) Plaintiff's second instruction took the case entirely from the jury. Whether she intended to abandon the contract was a question of fact to be determined by the jury from all the facts and circumstances surrounding the transaction and the conduct of the par-

Kraxberger v. Roiter.

ties. *Brewington v. Jenkins*, 85 Mo. 57. (3) There was no evidence that plaintiff was ready and willing to marry defendant, which was essential to plaintiff's case. *Groll v. Tower*, 85 Mo. 219. (4) The evidence as to the advice given plaintiff by her pastor should have been admitted. (5) The verdict for three thousand dollars was excessive, there being no evidence of defendant's financial responsibility. *Gilbert v. Berkinshaw*, Lofft. 771.

*Draffen & Williams* and *D. E. Wray* for defendant in error.

(1) There was no error in the exclusion of the questions asked plaintiff in regard to her conversation with the preacher, Klechner. *State v. Leland*, 82 Mo. 260; *Jackson v. Hardin*, 83 Mo. 175; *Schlicker v. Gordon*, 19 Mo. App. 479. (2) Plaintiff's first instruction was properly given. If defendant notified the plaintiff that he could not, or would not, marry her, it constituted a breach of his contract and authorized her to sue at once. *Burtis v. Thompson*, 42 N. Y. 246; *Holloway v. Griffith*, 7 Am. Rep. 208; *Kurtz v. Frank*, 76 Ind. 594. (3) A change of feeling is no defence, nor the fact that another had supplanted the plaintiff in the affections of the defendant. 2 Parsons on Contracts [5 Ed.] 68. (4) Plaintiff's second instruction is correct. (5) Even an offer by a defendant to perform his agreement, which was refused by the plaintiff has been held incompetent to mitigate the damages, much less could it be a defence. *Bennett v. Beam*, 42 Mich. 346; *Holloway v. Griffith*, 32 Ia. 409; *Miller v. Hays*, 34 Ia. 496. (6) The measure of damages was properly declared. *Wrightman v. Coats*, 15 Mass. 1; *Royal v. Smith*, 40 Ia. 615; *Wilbur v. Johnson*, 58 Mo. 600. (7) There was no error in the refusal of defendant's fifth instruction. *Hamby v. Brooker*, 51 Mo. 439; *State v. Holme*, 54 Mo. 153; *State v. Chambers*, 87 Mo. 406; *Snell v. Bray*, 56 Wis. 156.

(8) The damages were not excessive. *Wilbur v. John-son*, 58 Mo. 600; *Wrightman v. Coats*, 15 Mass. 1.

BRACE, J.—Action for damages for breach of promise to marry. Defendant admitted the engagement and pleaded a release. The jury found a verdict for the plaintiff for three thousand dollars. The following is all the evidence in the case that it will be necessary to consider in passing upon the errors complained of:

Plaintiff testified: "We were engaged about three months when he commenced to break off the engagement, by letters. At first I could not believe that he meant what he wrote, and wrote him for an explanation. When I learned he was in earnest it almost made me crazy. I could not eat or sleep. I came to Missouri; went to Uncle Mike's; staid all night; next morning went to see the defendant. He treated me very cool and would scarcely speak to me; he said it was time to break off the engagement; he said his feelings were changed, and that he could not marry me; that he loved another woman; that he loved her before he met me. I took off the ring he had given me and gave it up to him, and told him he did not talk that way when he courted me and won my love, and told him the way he had treated me had broke my heart. I did not know what I was doing when I gave him the ring; he said he had written to me and told me what the reason was; he then hung his head down and would not talk to me any more; I then left the room and told him I would see him again; I went to see him because I could not believe what he had written in his last letters, as it was so different from what he had said and written before; I have his letters." The letters were read to the jury, but not embraced in the bill of exceptions.

On cross-examination the witness was asked the following questions:

Q.   "Since this conversation had with defendant,

and after you had given up the ring and presents to defendant, did you have any conversation with preacher Kleckner?" (Objected to by plaintiff, and objection sustained).

Q. "Did preacher Kleckner tell you that a marriage engagement could not be cancelled, and it was your religious duty to enforce it, or words to that effect?" (Objected to by plaintiff, and objection sustained).

Defendant, in his own behalf, testified: "I wrote the letters read in evidence; I referred to another lady in one of those letters; I was engaged to her before I was engaged to plaintiff; I thought I had got over my love to her, and told plaintiff so before we were engaged, but found I had not, and changed my mind about marrying plaintiff, and wrote to plaintiff immediately; she came to my father's house to see me; I told her how it was; that I could not marry her with a clear conscience, and she offered me the ring, our engagement ring, and some other presents I had made her; I did not take them, but told her she could keep them; she laid them on the bureau and left them; when she left she said she would see me again about it; we had no more conversation." On cross-examination he said: "I conveyed the impression to her that it would be wrong for me to marry her; I told her that I had become convinced I could not marry her while I loved this other lady; this was before she handed me the ring; I told plaintiff's uncle the day we had the talk that I would not marry the plaintiff."

Miss Roiter, sister of defendant, testified in his behalf: "I saw the plaintiff when she came out of the room after the conversation with the defendant at my father's house; she told me that defendant did not love her any more, and that if he did not love her she did not want him; she was crying at the time, and went away from our house crying."

The exception to the ruling of the court, refusing to allow plaintiff to answer the questions set out in the evidence, is not well taken. The questions do not disclose the fact that any answer the witness might make, responsive thereto, would be material evidence in the case, and the purpose for which they were asked is in no way disclosed, except by the questions themselves. *Aull Savings Bank v. Aull*, 80 Mo. 199; *State ex rel. Farwell v. Leland*, 82 Mo. 260; *Jackson v. Hardin*, 83 Mo. 176.

We deem it unnecessary to set out the instructions given and refused in this case, for the reason that, as we view the evidence, there was but one question to be submitted to the jury, and that was the amount of the damages, and the instruction given by the court on that subject was unobjectionable. The contract of the defendant, and his refusal to perform it, was admitted, and there was no evidence tending to show that the contract was rescinded by agreement of the plaintiff, or that she ever released her action thereon for damages for its breach. On the contrary, the uncontradicted evidence of both parties, and there is no conflicting evidence in the case, was to the effect that the defendant, during the pendency of the engagement, having transferred his affection, the sole basis upon which such a contract should rest, to another, without in any manner consulting the feelings, or the wishes, of the plaintiff, informed her first by letter that he had changed his mind about marrying her; that he loved another, and afterwards, when scarce crediting the fact which had thus been communicated, she comes from Illinois to Missouri, and seeks an interview with him in order that she might learn certainly what was his disposition and intentions toward her, he again informs her that he loves another, and will not marry her. Fully realizing then, that she had indeed lost the love that he had once assured her was hers, and upon the faith of which she had engaged herself to him, and that his determination

not to marry her was final and conclusive, she takes from her finger the engagement ring, once given her as a token of his sincerity and fidelity, now a memento only of his fickleness and treachery, and, in her express words, "gave it up to him," and went crying from his presence. This, forsooth, is claimed to be evidence that the plaintiff agreed to rescind the contract and release the defendant from the obligations thereof. The giving up by plaintiff of her engagement ring, thus wrung from her by the action of the defendant, is to be tortured into an agreement to rescind a contract which the defendant had already refused to perform, and to the performance of which he had interposed an insuperable barrier in the mind of the defendant, as it would be in the mind of every true woman ; into an agreement to rescind a contract that she was never asked or afforded an opportunity to rescind.

The defendant, by his own action, had left her no choice in the matter; nothing that she could do but accept the situation he made for her, abandon all hope of the marriage, give up the symbol of that hope, and seek such compensation in damages as the law could give her for the injury she had suffered, without fault on her part, at the hands of the defendant, and this, the only remedy left her, she seeks in this case, her damages, having been assessed, under proper instructions, by a jury, whose verdict there is nothing in the record even to suggest was in any way affected by passion or prejudice ; there was no error in the refusal of the court to give any of the instructions asked for by the defendant, and those given presented the case to the jury even more favorably to the defendant than he could have asked upon the evidence, upon which the court might have well instructed the jury that there was no evidence tending to prove a release, as pleaded.

The judgment of the circuit court is affirmed. All concur, except Norton, C. J., absent.