JOEL A. BALL, Respondent, v. THE CITY OF INDEPEND-
ENCE, Appellant.

Kansas City Court of Appeals, May 19, 1890.

1. **Municipal Corporations:** EXCAVATION IN SIDEWALK: DUTY.
Persons are entitled to travel the streets of a city at all times, and
it is the city's duty to protect them at all times, while so doing,
against damages arising from unguarded excavation therein. It
is sufficient for the city to show the placing of proper and secure
guards, and it is not liable if a wrongdoer removes them.

2. **Negligence:** WITHDRAWAL OF CASE FROM JURY. When the evi-
dence is conflicting upon material issues in the case, it is the
province of the jury to pass upon it, and where from the undis-
puted facts the inference cannot be drawn under the rules of law,
that the defendant is not guilty of any negligence, it is a usurpa-
tion by the court of the province of the jury to withdraw the case
from their consideration.

3. **Instructions.** Instructions in this case considered extremely
liberal to the defendant and not fit subject of complaint.

4. **Appellate Practice:** REFUSED EVIDENCE IN RECORD. Where the
trial court refused to admit certain implied admissions of the
defendant, in order that the appellate court may review such
action, it is necessary that the record should disclose what it was
proposed to prove had been said by the witness to plaintiff, so the
court can see the materiality thereof. In this case, GILL, J.
(ELLISON, J., *concurring*), finding the record sufficiently discloses
the offered evidence, *holds* it was material and its refusal fatal
error. SMITH, P. J. (*dissenting*,) finding the record fails to disclose
the offered evidence, *holds* the court cannot review the action
of the trial court in refusing to admit it.

*Appeal from the Jackson Circuit Court.*—HON. R. H.
FIELD, Judge.

REVERSED AND REMANDED.

*Gates & Wallace* with *J. G. Paxton*, for appellant.

Ball v. The City of Independence.

(1) The undisputed evidence proved that the excavation was barricaded on Saturday night when the workmen quit work. This discharged the full duty of the city. It had a right to presume that the barriers would not be removed by a stranger on Sunday. This is a question of law upon facts which are undisputed, and from which different inferences cannot be drawn. There was no negligence and the defendant is not liable. The defendant's first instruction should have been given and the case taken from the jury. *Dooly v. Town of Sullivan*, 11 West. Rep. (Ind.) 816; *Doherty v. Inhabitants of Waltham*, 4 Gray, 596; *Mullen v. Town of Rutland*, 55 Vt. 77; *Parker v. City of Cohoes*, 10 Hun. 531; s. c., affirmed in 74 N. Y. 610; *Sevester v. Mayor of New York*, 47 N. Y. Sup. Ct. 341; *Littlefield v. City of Norwich*, 40 Conn. 406; *Cuthbert v. City of Appleton*, 22 Wis. 642; *City of Centralia v. Krouse*, 64 Ill. 19; *Binicker v. Railroad*, 83 Mo. 660; *Walthers v. Railroad*, 78 Mo. 617; *Schmeikhardt v. City of St. Louis*, 2 Mo. App. 571; R. S. 1889, sec. 5482. (2) The court erred in refusing defendant's instructions numbered 4 and 6, and in giving instruction numbered 6 of its own motion. Authorities cited, point 1. (3) The court erred in excluding the testimony of the witness, J. W. Sapp, that he told plaintiff he had heard he had been using his arm, which plaintiff did not deny. This was tantamount to a charge that plaintiff had been using his arm, and, the plaintiff not having denied it, it was competent as an admission of the fact. *State v. Miller*, 49 Mo. 505; *People v. Clauson*, 2 Utah, 502; *Mix v. Osby*, 62 Ill. 193; *State v. Walker* 98 Mo. 106.

*Crysler & Kenyon*, for respondent.

(1) The duty to keep the streets and sidewalks in safe condition rests upon the municipal corporation, and cannot be surrendered or abdicated. It is liable for

injuries caused by open excavations made therein with
its knowledge or consent, express or implied, by the
adjoining lot-owner for the purpose of an area or side-
walk. And this general rule, laid down by Judge
DILLON, is approved in all its phases in Missouri. 2
Dillon Mun. Corp. [ 3 Ed.] sec. 1027, and notes; *Blake
v. City of St. Louis*, 40 Mo. 569 ; 45 Mo. 452; *Bowie v.
Kansas City*, 51 Mo. 462 ; *Bassett v. St. Joseph*, 53 Mo.
290 ; *Hill v. City of Kansas*, 54 Mo. 598 ; *Oliver v. City
of Kansas*, 69 Mo. 79, citing Dillon; *Beaudeau v.
Cape Girardeau*, 71 Mo. 395; *Welsh v. St. Louis*, 73
Mo. 71 ; *Laewer v. Sedalia*, 74 Mo. 444; *Tritz v.
Kansas City*, 84 Mo. 640 ; *Kiley v. Kansas City*, 87
Mo. 107 ; *Norton v. St. Louis*, 97 Mo. 541. ( 2 ) If the
city knew of the defect, had notice that it existed, or
that it was done by its knowledge or consent, then
notice is unnecessary, and the fact that its officers and
agents saw the barricades or danger signals were put up
sometimes does not fulfill the duty of the city to
the public. Such precaution must be maintained. 2
Thompson on Neg. [ 1 Ed.] 663, and notes ; *Rockwell v.
Railroad*, 64 Barb. 438; affirmed in 53 N. Y. 615;
*McCabe v. Hammond*, 34 Wis. 590; 2 Thompson on
Neg. [ 1 Ed.] 773, note 8. It is no defense that barriers
and notice were removed by evil-disposed persons.
*Brown v. Jefferson County*, 16 Iowa, 339 ; *Myers v.
Springfield*, 112 Mass. 489. Ordinarily not, if put up
at sunset each night. *Prentiss v. Boston*, 112 Mass.
43 ; *Doherty v. Waltham*, 4 Gray, 596 ; Thompson on
Neg. [ 1 Ed.] 788. The taking away of barrier, by pri-
vate wrongdoer, placed by town around excavation,
will not exonerate them. *Prentiss v. Boston, supra.*
( 3 ) The case was properly submitted to the jury, in
regard to the question of notice, even if there had been
no direct evidence, which there was. *Carrington v.
The City of St. Louis*, 89 Mo. 212. ( 4 ) The evidence
of the witness Sapp is set out in full, and was properly
excluded as hearsay. What some other person, not a

party to the suit, said to the witness, not in the presence of plaintiff, is clearly hearsay and incompetent. *O'Neil v. Crain*, 67 Mo. 250; *Fougen v. Burgess*, 71 Mo. 389; *Haskins v. Railroad*, 19 Mo. App. 319; *State v. Glahn*, 97 Mo. 679; 2 Howard (Miss.) 846.

SMITH, P. J.—This was a suit begun in the circuit court of Jackson county, by plaintiff against defendant to recover damages for personal injuries alleged to have been sustained at the hour of ten o'clock on September 11, 1887, by falling into an excavation in one of the streets of defendant, which it had negligently permitted to remain open and unguarded at night. The answer was a general denial supplemented with the plea of contributory negligence. There was a trial, and judgment for the plaintiff, from which defendant has appealed.

I. The first ground of the defendant's appeal is, that the circuit court erred in refusing to give its first instruction which was in the nature of a demurrer to the evidence, on the ground that it disclosed no fact from which the law would deduce the inference of negligence. A solution of this question must be made in the light of so much of the evidence as is pertinent thereto, and of which it is proper here to summarize.

R. Pendleton, a witness for plaintiff, testified that Payne & Ott had made an excavation for a cellar for a building and that it extended "clear across the sidewalk out to the curbstone," and that it looked to be eight or ten feet deep; that it had been there quite a little time before the plaintiff was injured; that plaintiff left witness' livery stable, to go home, after it was dark; that there was no signal or other lights in that part of the street where the excavation was situated, on the night plaintiff was hurt, nor were there any barricades across the sidewalks at that place at that time; that there were no barricades across the sidewalk on the day (which was Sunday) preceding the night the plaintiff

fell into the excavation; called the attention of the mayor of the city, Alderman Chesbro and the contractor in charge of the excavation, to its dangerous character. W. S. Furnish, for plaintiff, testified that he frequently passed the excavation after night, and that he never saw any signal lights there, but that there were barricades around it probably half of the time before plaintiff got hurt. William Ray, for plaintiff, testified that he passed the excavation in going to and returning from his meals each day; that there were no barricades up there on the night plaintiff fell in; that there were neither signal lights nor barricades there when he took plaintiff out of the excavation; that there had been barricades up there part of the time before plaintiff was hurt, but that he noticed none there the Saturday before plaintiff was hurt. J. N. Wood testified that he passed the excavation every day, and that he never saw any barricades on the north end of the excavation. C. S. Chesbro testified that he was a member of the board of aldermen of the city, and that he had "noticed the barricades in a casual way," and that he had "seen it down and up;" that he lived on the opposite side of the street from the excavation. Ben. Garth, for plaintiff, testified that, while the excavation was being made, he worked near it; that he had seen it "lots of times" at night when not barricaded; that, on the Sunday preceding the night of the accident, it was not barricaded; that nearly every night that he passed the excavation the barricade was down; that, on the *Saturday night before the plaintiff fell into the excavation the barricades were down.* John Weitzel, for plaintiff, testified that the excavation was right south of his shop, and prior to the time plaintiff was hurt the excavation was sometimes barricaded; that, on the Saturday evening preceding the Sunday night plaintiff was hurt, he but an old wheelbarrow on the excavation wall which extended across the sidewalk and

from twelve to eighteen inches above it; on Monday morning following, he noticed the wheelbarrow was in the excavation. The plaintiff testified that he started to walk home on the Sunday night he was injured, from the livery stable of the witness Pendleton, and that it was dark, and, there being no signal lights or barricades around the excavation, he walked into it, from which he received severe injuries, describing them. The defendant's witness, T. B. Smith, testified that he was the contractor, who made the excavation, and that on the Saturday night before the plaintiff was injured he had the barricade put up. A. R. Johnson, for defendant, testified that he was employed by contractor Smith, while making the excavation and that "it was always barricaded at night," and that he put up the barricades the Saturday night before the accident; that he securely nailed it on the outside of the sidewalk to a telegraph pole, and on the inside to the building, so strongly that a man going against it would not push it down. C. Ott, for defendant, testified that the barricade was up at six o'clock on Saturday evening before the accident. T. C. Caldwell, for defendant, testified that he was mayor of the city before and at the time plaintiff was injured, and that, after witness Pendleton had told him that the excavation was a dangerous place, he had spoken to the workmen, asking them to close it up every night, and that on every evening after that he had noticed that it was closed.

An analysis of the foregoing excerpts from the evidence discloses a palpable conflict in respect to the issue of negligence. It is made to appear from defendant's evidence that on the Saturday evening, the day preceding the Sunday night on which plaintiff was injured, that a barricade had been placed across the sidewalk on the north side of the excavation. It is made to appear by the plaintiff's evidence that no signal lights had at any time been placed, during the night-time, at the excavation, and that a. barricade had only

occasionally been placed there during the night-time, prior to plaintiff's injury; that no barricade had been put up there on the Saturday preceding the Sunday night of the plaintiff's injury, nor were there either barricades or signal lights there on the night of the injury. I should have, myself, thought that upon defendant's own evidence the case should have been submitted to the jury.

The question is, what is the duty of a person who makes an excavation in the public highway, such as he may lawfully make for temporary purposes of building and the like? The performance of the work necessarily renders the street unsafe for night travel. The danger arises from the nature of the improvement, and if it can be averted only by special precautions, such as placing guards or the lighting of the street, the corporation which has authorized the work is plainly bound to take these precautions. *Storrs v. Utica*, 17 N. Y. 104; *Grant v. Brooklyn*, 41 Barb. 381. Persons travel all hours of the night, and the obligation to warn travelers of the excavation, which they have authorized to be made, ought to continue *all the time*. It would seem that since persons are entitled to travel the streets of a city at all times, that it ought to be its duty to protect them at all times, while so doing, against damages arising from an unguarded excavation therein. But it is unnecessary to pursue this line of thought further, since the rule of decision seems to be quite uniform, that it is sufficient to show that proper signals and safe-guards were placed about an excavation on quitting work; and neither the corporation nor the contractor is liable if a wrongdoer removes the signals or barricades during the night. *Dooly v. Town of Sullivan*, 11 N. W. Rep. (Ind.) 816; *Doherty v. Waltham*, 4 Gray, 596; *Mullen v. Rutland*, 55 Vt. 77; *Parker v. Cohoes*, 10 Hun. 531; *Sevester v. Mayor*, 47 N. Y. 341; *Schmeikhardt v. St. Louis*, 2 Mo. App. 571; *Binicker v. Railroad*, 83 Mo. 660; *Walthers v. Railroad*, 78 Mo.

617.   From the *undisputed facts* of the case, the inference cannot be drawn under the rule just referred to, that the defendant was guilty of no negligence.   The law is, that when the evidence is conflicting upon a material issue in the case, that it is the province of the jury, and not the court, to pass upon it.   *King v. Railroad*, 98 Mo. 235 ; *Forster v. Mfg. Co.*, 98 Mo. 391.

It is, therefore, quite plain that, if the jury believed the evidence introduced by the plaintiff, that they might very well find for him, on the issue of negligence. In a case where the evidence was so conflicting, as in this, it would have been a usurpation by the court of the province of the jury, for it to have withdrawn the case from the consideration of the jury, by the giving of the defendant's first instruction.   It was a proper case for the jury.

II.   No error is perceived in the action of the trial court in giving instruction number 6 of its own motion, and in refusing those numbered 4 and 6, asked by the defendant.   This instruction, with others given by the court on its own motion, embody substantially the same theory as those refused for defendant.   They all go to the very *ultima thule* of the principles of the rule invoked by the defendant and stated in the preceding paragraph of this opinion.   The instructions of the court were extremely liberal as to defendant, and ought not to be made the subject of complaint by it.   And all the instructions given, when taken in their entirety, very fairly and fully declared the law of the case, and in them we can discern no harmful error.

III.   The defendant's further contention is that the trial court erred in refusing to permit the witness Sapp to testify what he had told the plaintiff he had heard what others had said about his using his arm. Admissions may be implied from acquiescence of the party to what is said or done in his hearing.   1 Greenl. Ev., sec. 196 ; *State v. Walker*, 98 Mo. 106 ; *State v.*

Ball v. The City of Independence.

*Miller*, 49 Mo. 505 ; *Mix v. Osby*, 62 Ill. 502.   Now, in this case, the witness Sapp made a statement to plaintiff of the things he had heard, and to which statement plaintiff made no reply.   But the difficulty here is that the record does not disclose what it was that the defendant proposed to prove by this witness, that he had stated to plaintiff that he had heard others say about his use of his arm.   How could the trial court, or even this court, determine whether the implied admission of plaintiff was material, unless it had been disclosed what the nature of the statement, so admitted, was ?   What did the plaintiff admit to be true ?   What did it tend to prove or disprove ?   The statement made by the witness to plaintiff becomes the admission of the latter and whether these were material or not could not be determined in advance of any statement of the nature of the same to the court.   If the defendant had stated to the court *what* it was it proposed to prove by the witness had been said to him by plaintiff, then the court could have intelligently determined whether the implied admission of the plaintiff was or was not material evidence.   This case might be reversed on the bare refusal of the court to permit an answer to this question, and, on a retrial, it might appear that the matter elicited was wholly immaterial and incompetent.   This ground of the defendant's complaint must be held against it.   *Jackson v. Hardin*, 83 Mo. 175 ; *Ault Sav. Bank v. Ault*, 80 Mo. 199 ; *Kraxberger v. Roiter*, 91 Mo. 404.

It results, from these considerations, that the judgment must be affirmed.

GILL, J. (ELLISON, J., *concurring.*) — I do not concur with Judge SMITH as to paragraph 3 of his opinion.   In my opinion, the trial court erred in excluding the proffered testimony of witness J. W. Sapp, called by defendant.   The witness was asked by defendant's

counsel as to what conversation he, witness, had with Ball after his arm was hurt. Sapp proceeded to relate the circumstances of having met Ball in a saloon at Independence, and, after stating some conversation had between the two ( not important here to repeat ), said : "I was talking to him about carrying his arm in a sling ; during the few minutes, *I said I had heard he had been using his arm*—" Here the witness was interrupted by plaintiff's counsel, who objected to such evidence. Defendant's counsel then and there cautioned the witness to state what he ( witness ) then said to Ball. Witness answered : "That is what I am going to tell, just exactly what I said to him." Plaintiff's counsel then pressed the objection on the alleged ground that such testimony was mere "hearsay and incompetent." Defendant's counsel stated to the court that this remark was made by Sapp to Ball ( to-wit : "That he had heard he had been using his arm"), and that it was not denied by Mr. Ball. The court sustained the objection, and excluded the evidence so offered. Whatever else, then, the witness may have further said as to. what he told Ball, the evidence *offered and rejected* was this remark by Sapp to Ball : "*I have heard you* ( Ball ) *have been using your arm,*" and this Ball did not deny. This was not hearsay evidence, but belongs to that class known as implied admissions—statements made to, and in the presence of, the party, and calling, properly and naturally, for a reply from men similarly situated, and, being acquiesced in by silence, are to be regarded as admitted. 1 Greenl. on Ev., sec. 197 ; *State v. Miller*, 49 Mo. 505 ; *State v. Walker*, 98 Mo. 106 ; *People v. Clauson*, 2 Utah, 502 ; *Mix v. Osby*, 62 Ill. 193.

The cases cited by plaintiff's counsel in nowise conflict with the rule announced in the foregoing cases. In 2 Howard ( Miss.) 846, it was sought to establish an admission as against the plaintiff by detailing a conversation had in his presence relating to a circumstance of

which he knew nothing ; and, of course, as he knew nothing about the matter, whether true or false, it could not be expected that he would either assent or deny. Judge SHARKEY there says : "Whenever one party speaks of a matter which must necessarily be within the knowledge of the other, the suffering the statement to remain uncontradicted may, with propriety, be considered as an admission of the fact stated. But the rule cannot be extended further. If, therefore, the matter spoken of be not within the knowledge of the party addressed, his failure to contradict the statement cannot amount to an admission of its truth." So, in case from 22 Cal. 232, the correctness of the general rule is admitted, but was refused enforcement in that case, because the statements ( made in presence of the party and which he failed to deny ) consisted of the testimony of a witness in court, and in the trial of the case. It was there entirely improper, as the court very well says, to impose an obligation on a party to deny, in open court, the testimony of witnesses then being heard. "A denial or contradiction under such circumstances would produce great confusion, and cause continual wrangling between the party and the witnesses. There is a certain regularity, order and decorum required in such proceedings, which precludes parties from interposing with denials and objections as they could in common conversations."

Neither is there any difficulty here to discover that the lower court, by refusing the evidence offered, excluded matter material to the issues then involved. There is no question but that " this court will not reverse a judgment for refusal of the trial court to admit evidence, if it cannot determine from the record whether the evidence is material or not." 80 Mo. 199 ; 83 Mo. 187 ; 91 Mo. 408. So that, if this record simply showed questions to witness Sapp, asking him to state any conversation he had with Ball in relation to his arm, with objection thereto, and same sustained, with nothing

further, then these cases just cited would apply, since this court would be unable to say that even an answer by the witness would furnish any matter material for the jury's consideration. But, in the case at bar, the witness Sapp was proceeding to state, and, in fact, *did* state, matter material to the issues involved. The court excluded what had been said, and refused to permit further testimony of a like kind. The evidence offered tended to reduce the extent of recovery. It tended to prove that plaintiff was feigning, or exaggerating, his injuries so as to inflate his verdict, and was clearly relevant and proper matter for the consideration of the jury. Holding these views, I am of the opinion that the judgment of the circuit court should be reversed and cause remanded for a new trial, and, with the concurrence of ELLISON, J., who is of the same opinion, it is so ordered. SMITH, P. J., dissents for reasons set out in his separate opinion to which this is appended.