## LAUGHLIN ET AL. *vs.* FAIRBANKS AND LISLE & EDWARDS.

1. It is well settled, that courts of law will protect the rights of assignees of a chose in action against all persons having notice of such assignment, express or implied. Therefore, where a judgment debtor, with notice of the assignment of the judgment to a third person, pays the amount thereof to the judgment creditor, it will be no discharge of the judgment.

2. Where a judgment had been assigned, and the debtors, with notice of such assignment, paid the amount to the judgment creditor, and procured from him a receipt for the same, and thereupon the judgment creditor made an endorsement on the execution, directing the sheriff to return the same satisfied; it was held, that such endorsement might be vacated on motion, and a new execution issued for the benefit of the assignees of the judgment. But before such order could be made, all the judgment debtors were entitled to notice of such motion.

## ERROR to Miller Circuit Court.

Minor *and* Miller, *for Plaintiffs.*

The plaintiffs in error insist—

1. That they cannot be brought into court by motion (without notice) and be made to answer in damages to any one who may claim to be the assignee of their judgment creditor; the office of a motion being merely to obtain a rule or order in the progress of a cause.—3 Bl. Com., side-page, 304; 1 Call, 476; 4 H. & M., 276.

2. The plaintiffs insist that there was error in vacating and setting aside the order endorsed on said execution: and that the judgment against only two of the plaintiffs in error, for costs, omitting to notice the other three, is error.

3. There is no fraud charged or proven against the plaintiffs in error, nor is it shown that they had notice of the assignment. The filing of the assignment in the

clerk's office imparted no notice. The testimony of witnesses, Parkam and Maugis, does not prove notice of an assignment; all that Parkam says in relation to the notice is, that "he heard Lisle say to Laughlin, that he, Lisle, and the said Edwards, were to have each a third of the judgment." Maugis says, that " he heard Laughlin say that Lisle had told him (Laughlin) that he, Lisle, was to have one-third of the damages, and that Edwards was to have another third; but that Laughlin disclaimed any knowledge of the assignment."

4. The claim of the said Lisle & Edwards being a chose in action by virtue of an assignment, and such as they are authorized to proceed on in their own name, the proceeding should have been in the name of the assignees.

5. The assignment is not to Edwards & Lisle, but to each a separate and distinct part or interest; but if this is not so, still it is clearly shown that only "part and parcel" of the judgment is assigned. The plaintiffs in error are, therefore, not chargeable, unless it is made to appear that they assented at the time, or subsequently to the transaction.—Chitty on Contracts, p. 614, note 1, and authorities there cited.

6. The plaintiffs in error rely upon their receipt offered by them in evidence, and insist that the motion ought to have been refused.

7. Questions of fact as well as law being involved in the controversy, the proceeding should have been such as to afford either party the privilege of a jury.

8. For aught that appears in this record, the payment to Fairbanks became necessary to save the property of the plaintiffs in error from sale, and one of them from imprisonment; and they insist, that if proper payments have been made, it is the fault of the defendants in error.

LISLE *and* EDWARDS, *for Defendant.*

1. A chose in action may be assigned by parol, or by writing not under seal. If the plaintiffs in error knew that a part of said judgment belonged to the defendants in error, or that they were " each to have a part of the judgment," it was sufficient notice to them whether they understood that there had been a written assignment of the judgment or not.—19 Johns. Rep., 95 and 344; 5 Johns. Rep., 193; 3 Johns. Rep., 425.

2. Courts of law will protect the interest of assignees of choses in action. Where full relief can be given in a court of law, the parties will not be driven to a court of chancery for remedy.

3. The court did not permit improper or illegal testimony to be given.

4. The finding of the court was not against the evidence. It is the province of the jury, or the Circuit Court when sitting as a jury, to determine what weight is due and ought to be given to the testimony of a witness. Much depends on the manner in which a witness testifies; his tones—his gestures—the apparent willingness or unwillingness with which he gives his testimony for or against a particular party, all tend to fix the character of his evidence; and this Court will not reverse the judgment of the Circuit Court because the judgment is against the evidence, unless a flagrant case is made out.—5 Mo. Rep., 522, 525, Lackey *vs.*

Lane & McCabe, 7 Mo. Rep., 220; Rennick *vs.* Walton, 7 Mo. Rep., 292; Campbell & Mason *vs.* Hood, 6 Mo. Rep., 211.

5. It is a settled rule of law that courts of law will regard the assignment of choses in action, and protect their interest against any person having notice, or who is bound to take notice, of the assignment.—Ells *vs.* Finch, 5 Johns., 193; 1 Johns. Cases, 51, 2.

6. The assignee of a chose in action will be protected against the release of his assignor, after notice of his assignment to the debtor.—Wheeler *vs.* Wheeler, 9 Cowen's Rep., 34; Pattison *vs.* Hall, 9 Cowen's Rep., 747.

7. A release by the assignor of a chose in action, after notice of assignment to the debtor, is a mere nullity.—See authorities cited to last point.

8. Where the plaintiff in a judgment assigned the same, and after the assignment, and notice of the assignment given to the debtor, the assignor released the same, the court declared the release fraudulent, and on motion vacated the order of satisfaction, and ordered a *fieri facias* in favor of the assignee.—Wardell & Eden, 2 Johns. Cases, 121, 258, 62.

9. The Circuit Court has full power and authority to issue all writs which may be necessary to carry out the orders and decrees of the same.—Revised Code 1835, p. 158, sec. 33.

10. That the receipt given by Fairbanks to Laughlin and Wilson was given for the purpose of defrauding Lisle & Edwards, and is therefore void.

NAPTON, J., *delivered the opinion of the Court.*

At the December term, 1842, of the Miller Circuit Court, W. S. Fairbanks obtained a judgment against John M. Laughlin, Michael Wilson and Others, for thirteen hundred and seventy-five dollars. At the July term succeeding, Lisle & Edwards, assignees of two-thirds of the judgment in the above cause, filed a motion to set aside and vacate an order or receipt entered on the execution issued on each judgment, to the sheriff of Johnson county, directing said sheriff to return the execution satisfied; and demanding an alias execution for their portion of the judgment. They assigned as reasons for vacating this endorsement, that previous thereto, Fairbanks had assigned a part of said judgment to Lisle & Edwards, of which assignment defendants had notice; that said receipt was given for the purpose of defrauding said Lisle & Edwards, and that $916 66, part of said judgment, was yet unpaid.

Objections were made to the hearing of this motion, on the ground that all the defendants were not made parties; that no notice of the motion had been given, either to Laughlin and Wilson, (who appeared by attorney and made these objections,) or to any of the other defendants.

The court overruled the objections, and the motion was entertained. On the hearing, the precipe of Lisle & Edwards, attornies for the plaintiff, Fairbanks, to the clerk of the Miller Circuit Court, was read, directing the clerk to issue an execution to Johnson county, with a capias against Tibbetts, (one of the defendants,) and to deliver the execution and capias to John M. Laughlin or Michael

47

Wilson or order.   The execution was also read, upon which there was the following endorsement: —

"The sheriff of Johnson county will return the within execution with the principal fully satisfied; that is, with a credit of thirteen hundred and seventy-five dollars, which I have received from John M. Laughlin and Michael Wilson, two of the defendants, this 27th December, 1842.          W. S. FAIRBANKS."

The assignment of two-thirds of the judgment obtained by Fairbanks *vs.* Wilson, Laughlin and Others was also produced.   The assignment was in writing, under seal, and purported to transfer to the said Lisle & Edwards, each, one-third of said judgment.   The assignment was dated 7th December, 1842.

A witness was introduced, on the part of the plaintiffs, in the motion who testified, that at the term of the Miller Circuit Court, after the rendition of the judgment in the case of Fairbanks *vs.* Laughlin, Wilson and Others, B. M. Lisle, one of the plaintiffs in said motion, said to Laughlin, that he, Lisle, and the said Edwards were to have each a third of the judgment, and that, for his part, he would give ten or twenty years, and he would try and get Edwards to give time; and that Fairbanks would take a wagon for his part, &c.   Witness did not know that Wilson heard this conversation; that Lisle spoke in an ordinary tone of voice, and that Wilson and others were in the crowd, near at hand.

. Another witness, on behalf of plaintiffs, testified, that he had paid over in property and money, about six hundred and fifty dollars to Fairbanks, by the direction of Laughlin and Wilson.

A third witness testified, that he has heard Laughlin say, that Lisle was to have one-third of the damages, and Edwards was to have one-third.   Same witness heard Laughlin say, after the date of the return on the execution, that if Lisle and Edwards had an assignment of the judgment, he knew nothing of it.

The defendants, Wilson and Laughlin, produced on their part a receipt from Fairbanks, for the full amount of the judgment, dated the same day with the endorsement on the execution, and to the like effect.

The court, after hearing the evidence, made an order, vacating and setting aside the endorsement on the execution to the extent of nine hundred and sixteen dollars (being two-thirds of the judgment,) and directing an alias execution against the defendants for that amount, with an endorsement that it was for the benefit of said Lisle and Edwards.

To these proceedings, exceptions were duly taken, a new hearing demanded, which was overruled, and the cause is brought here by writ of error.

It is urged by the plaintiffs in error, that this motion, involving as it did questions of both law and fact, was improperly entertained; that the rights of the defendants in the execution should not be affected by such summary proceedings, and especially without notice to the parties interested; that the proofs of the notice of the assignment were insufficient to warrant the order of the court, and admitting that to be a question about which, upon the evidence, doubts might be entertained, they were entitled to a trial by jury, on issues to be directed by the court.

We entertain no doubt that a motion was a proper and legal mode to effect the object desired by the plaintiffs in the motion; but we are equally well satisfied

that the defendants in the judgment were entitled to a notice of such motion. When a motion is made in the progress of a cause, the parties are presumed to be in court, and only such notice is required as the rules of the court prescribe. No such presumption can arise after the case is disposed of; the parties cannot be supposed to take cognizance of steps taken in a cause, after the judgment has been signed, execution awarded, and ordered to be returned satisfied by the defendants. In every case, therefore, of a special motion, unless there has been an express or implied waiver of notice, the want of such notice would of itself be sufficient to vitiate the proceedings.—Brown *vs.* Bendrick, 18 Wendell, 511.

In this case the motion was made and entertained at the return term of the writ, without any notice to either of the defendants. It is true, that so far as two of the defendants were concerned, they appeared by attorney, and resisted the motion; and if the other defendants were no wise interested in the motion, it might be a question whether their appearance would not be construed as a waiver of notice, notwithstanding they objected to the hearing on this ground. Had the defendants who appeared applied for a continuance, they would unquestionably have been entitled to one. Had the court made the rule *nisi*, giving the defendants an opportunity of afterwards showing cause why it should not be made absolute, the proceedings of the court would have been more regular, and the objection on the part of the defendants, Wilson and Laughlin, would have less weight.

But all the defendants were entitled to notice. Here was a judgment in trespass against five defendants. A receipt in full is executed by the plaintiff, and this receipt is sought to be set aside, on motion, on the ground that it was fradulent and void against the assignees of this judgment. Can it be doubted that the three defendants, who had paid nothing, were interested in the result of this motion, and must necessarily be parties to it? There is no contribution between co-trespassers, and if one of the defendants paid the whole judgment, the others were entitled to the benefit of that payment. A release to one would be a release to all. (Merriwether *vs.* Nixon, 8 Tennessee Rep., 186; Lingard *vs.* Bromley, 1 Vesey & Beame, 117; Peck *vs.* Ellis, 2 Johns. Chan. Rep., 136.) And this rule prevails in equity as well as at law. (Peck *vs.* Ellis, 2 Johns. Chan. Rep., 137.) If the motion prevailed, execution would issue against all the defendants; if not, they were discharged. The proceedings on the motion, therefore, so far as three defendants are concerned, were *exparte*, and yet their interests were affected by the rule which was entered, so much so, that the *vacatur* of the endorsement on the execution made each of them liable for the full amount of the judgment unpaid.

With regard to the principles upon which the court acted, in determining the rights of the parties, the law seems now to be well settled, that courts of law will protect the rights of assignees to a chose in action, without requiring a party to resort to a court of equity, against all persons having notice of such assignment, either express or implied.—Wardell *vs.* Eden, 2 Caine's Ca., 126, 258; 1 Johns. Rep., 531; 3 *Ibid.*, 426; Briggs *vs.* Dorr, 18 *Ibid.*, 97.

To authorize the action of the court in entering the *vacatur*, it must have been satisfied, from the testimony, that Wilson & Laughlin made their payments on this judgment, after notice of the assignment to Lisle & Edwards.

In reviewing the evidence on this point, it must be observed, that this is not like a verdict of a jury, or the finding of a court sitting as a jury.   It is rather the exercise of an equitable jurisdiction assumed by courts of law, and admitted to be rightfully assumed where a suitable case presents itself.   The record must present a state of facts, warranting the exercise of this power, and all the evidence being preserved in the bill of exceptions, this Court may enquire into the sufficiency of this evidence, without infringing upon the rules which govern us in the re-examination of the verdicts of juries, or of courts assuming the province of juries.

In proceedings of this kind, where a court of law is called upon to exercise a summary jurisdiction, it might, with propriety, decline any interference, where questions of fact were presented, about which the evidence is variant or unsatisfactory.   In such cases, it is usual and proper to direct issues to try the questions of fact, and the court is relieved from the necessity of determining upon the weight of testimony or the credibility of witnesses.

We incline to think, that the testimony was sufficient to authorize the conclusion that Laughlin, one of the defendants, had notice of this assignment.   The observation of one of the plaintiffs in the motion, that "he, Lisle, and the said Edwards, were to have each a third of the judgment," would of itself be hardly sufficient to advise Laughlin, to whom the conversation was addressed, that there had been an assignment of this judgment; but his subsequent remarks, that, "for his part, he would give ten or twenty years," &c., would seem sufficient to apprize him, that he had a control over the judgment, and rebut the influence which perhaps might be made from the preceding observations, that he looked to Fairbanks for his share of the judgment, after it was collected.   *But how is this declaration to affect Wilson?*   It nowhere appears, that Wilson and Laughlin were partners; *in* which event notice to one would be sufficient.   And it can hardly be claimed, that the circumstance of Wilson's being in the crowd, where this observation was made, without any proof as to the probability of his being in a situation to hear the conversation between Lisle and Laughlin, would of itself affect him with notice.

We are aware that there may have been circumstances, trivial in themselves, which, connected with all the facts of the case, might authorize a belief, that both Wilson and Laughlin knew of this assignment; but as has been before observed, in a proceeding of this kind, a court should not act on a questionable state of facts.

The case of Wardell *vs.* Eden, which has been relied on to sustain the rule entered by the Circuit Court, will illustrate this principle.   In that case, notice of the motion had been served on the attorney of the defendant, and on the defendant himself, previous to the hearing; the notice of the assignment was in writing, and had been served on the defendant the day before the payments were made; and yet, on this state of facts, where every thing was susceptible of *positive* proof and was so established, a rule *nisi* only was entered, and that rule was not made absolute until the succeeding term.

Upon the whole, then, we are of opinion, that the court entertained this motion without the requisite notice to the defendants in the execution, and that there was not sufficient evidence of a notice of this assignment to Michael Wilson, one of the

defendants, to authorize the court to settle the rights of these parties in a summary proceeding by motion, and the judgment of the court, vacating the endorsement on the execution, is therefore reversed.