STATE OF MISSOURI, Respondent, v. JAMES W. RAGSDALE, Appellant.

Kansas City Court of Appeals, December 3, 1894.

1. **Evidence:** GRAND JURY: CONTRADICTION. Where a witness' testimony before a grand jury is different from that which he gives at the trial, it is competent to show this by a member of the grand jury.

2. **Appellate Practice:** EVIDENCE: RECORD. Appellate courts will not reverse a judgment for a refusal to admit evidence, if it can not be determined from the record whether the evidence is material or not.

3. **Evidence:** CONTRADICTION OF WITNESS. To impeach a witness by statements made out of court, it is necessary to ask him as to the time, place and persons involved in the supposed contradiction. Questions in this case are too general and indefinite.

4. ———: CONSULTING PROSECUTING ATTORNEY. The fact that the prosecuting witness consulted the prosecuting attorney as to the propriety of making the affidavit on which to base the affirmation or that other persons advised the same, is immaterial.

5. ———: GENERAL REPUTATION. It is proper in an impeachment of a witness to extend the inquiry not only to his general reputation for truth and veracity but also to his general moral character, but not into his general character as a law abiding, orderly man in the community.

6. ———: CONVERSATION TO POLICEMAN: RES GESTÆ. It is proper for a witness in detailing his arrest to state what he said to the policeman in the presence of the defendant who was the policeman's superior officer, and besides it is proper as part of the *res gestæ*.

7. Appellate Practice: INSTRUCTION: MOTION FOR A NEW TRIAL. Where the motion for a new trial does not assign the giving of instructions as one of the grounds, the appellate court can not notice such action of the court.

8. ———: ———: BILL OF EXCEPTIONS. Where the bill of exceptions fails to show the saving of an exception to the refusal of instruction, the appellate court is without power to review such action.

9. Oppression in Office: CORRUPTION. Under section 3732, Revised Statutes, 1889, the ingredient of corruption does not enter into every act of oppression, misconduct or abuse of authority by an officer in his official capacity and under color of his office. Cases and statutes reviewed and instructions set out in the opinion approved.

10. Definitions: CORRUPT AND CORRUPTION. Corrupt means to do an act for unlawful gain. Corruption means an act done with intent to gain advantage not consistent with the official duty and the rights of others, as a champertous contract; a contract of usury.

11. Oppression in Office: DISQUALIFICATION: INSTRUCTION. In a prosecution for malicious oppression in office, an instruction telling the jury that the punishment of the offense was disqualification for holding office and from voting, is properly refused, as that is not a matter for the jury but for the court.

12. ———: DUTY OF POLICEMAN: INSTRUCTION. In the prosecution of a mayor maliciously ordering the unlawful arrest of a party, an instruction informing the jury that the policeman was not obliged to obey the order if he knew the party was guilty of no offense, tenders an immaterial issue and is rightly refused.

13. Information: AFFIDAVIT: VERIFICATION: DUPLICITY. The affidavit upon which the information is based is *held* properly verified and sufficiently shows the knowledge of the affiant, and the information is *held* not subject to the objection of duplicity.

14. ———: CRIMINAL PLEADING: SPECIFIC ACTS. The information in this case complies with the rule that if a statute creating an offense does not specifically define it, then the information must set out in full all acts constituting the offense.

15. ———: OPPRESSION IN OFFICE: CORRUPTION. An information for malicious oppression in office need not allege that the acts were done corruptly and from improper motive, and is sufficient if it charges the offense in the language of the statute with proper specification.

State v. Ragsdale.

16. **Oppression in Office**: DISQUALIFICATION: JUDGMENT. A judgment upon conviction under section 3732, Revised Statutes, 1889, against a mayor of a city properly forfeits his office and proceedings analogous to *quo warranto* are not required as under 7127, *et seq.*

*Appeal from the Randolph Circuit Court.*—HON. JNO. A. HOCKADAY, Judge.

AFFIRMED.

Ben. T. Hardin for appellant.

(1) The court below erred in refusing to let defendant cross-examine the witness Twyman in regard to his having testified before the grand jury, etc. *Muller v. Hospital Association*, 73 Mo. 242; s. c., 5 Mo. App. 390; *State v. Miller*, 100 Mo. 606; *State v. Taylor*, 118 Mo. 153–159. And that was the way to lay the proper foundation to afterward impeach the witness by the testimony of members of the grand jury and others. R. S. 1889, sec. 4086; *State v. Thomas*, 99 Mo. 235; *State v. Downs*, 91 Mo. 19; *Brown v. Weldon*, 27 Mo. App. 251; *Ish v. Thompson*, 99 Mo. 160. (2) It was error for the court below to refuse to allow defendant to impeach the witness Edwards, by showing that his general character for morality, and as an orderly, law abiding man in the community where he lived was bad. *State v. Raven*, 115 Mo. 419; *State v. Shroyer* 104 Mo. 441; *State v. Rider*, 95 Mo. 475–486; *State v. Palmer*, 88 Mo. 568; *State v. Grant*, 79 Mo. 113; *State v. Grant*, 76 Mo. 236; *State v. Miller*, 71 Mo. 590; *State v. Breeden*, 58 Mo. 507; *State v. Hamilton*, 55 Mo. 520; *State v. Shields*, 13 Mo. 236. (3) The court erred in overruling defendant's objection to the conversation between the witness Edwards with Policeman Penn, in the absence of the defendant. (4) Instruction numbered

1, given for the state, is clearly erroneous. Laws of 1893, secs. 7, 12, 34, 35, 39. (5) The court erred in refusing instructions numbered 6, 7, 8, 9, 10 and 11 asked by defendant, and erred in giving those numbered 6, 7, 8 and 9 in a modified form; the word corrupt should have been left in, as that is one of the constituent elements of the crime charged. *Boyd v. Commonwealth*, 77 Va. 55; *State v. Kite*, 81 Mo. 97; *State v. Pinger*, 57 Mo. 243; *State v. Hein*, 50 Mo. 362; *State v. Gardner*, 2 Mo. 23; 2 Whart. Crim. Law, sec. 2518; R. S. 1889, sec. 3734; *Thomas v. State*, 14 Tex. App. 200; *Bowers v. State*, 24 Tex. 542; Anderson Law Dict., "Willful." (6) The affidavit is not properly verified and certified. R. S. 1889, sec. 4057, 4059; *Hargadine v. Van Horn*, 72 Mo. 371; R. S. 1889, sec. 4057; *State v. White*, 55 Mo. App. 356. And a defective affidavit is not cured by the information. *State v. Hatfield*, 40 Mo. App. 358; *State v. Davidson*, 46 Mo. App. 9; *State v. Cornell*, 45 Mo. App. 94, and cases cited; *State v. Ristig*, 30 Mo. App. 360; *State v. Hayward*, 83 Mo. 299. (7) The information charges four distinct statutory offenses in one and the same count, punishable under different statutes. R. S. 1889, secs. 3492, 3784, 3958, 3732, 3734, 3737. The information is bad for duplicity, charging so many separate and distinct offenses in one and the same count. *State v. Healy*, 50 Mo. App. 243; *State v. Bach*, 25 Mo. App. 554; *State v. Green*, 24 Mo. App. 227; *State v. Clevenger*, 20 Mo. App. 626; 1 Bish. Crim. Proc. [3 Ed.], sec. 432. (8) The information is also bad, in that it fails to charge that the acts of defendant were knowingly, willfully and corruptly done, and from an improper motive. *State v. Kite*, 81 Mo. 97; *State v. Pinger*, 57 Mo. 243; on pp. 280 and 288; *State v. Hein*, 50 Mo. 362; *State v. Gardner*, 2 Mo. 23; *Boyd v. Commonwealth*, 77 Va. 55

(9) The information charged no offense under the statute upon which it is based, and under which defendant was prosecuted. He should have been proceeded against for assault, and disturbing the peace, which were no part of his official duties. He could not curse and cane a man "under color of his office." *State v. Bolin*, 110 Mo. 209; *Com. v. Williams*, 79 Ky. 42; *State ex rel. v. Davis*, 88 Mo. 585. (10) The court erred in rendering judgment that defendant forfeit his office of mayor. The court instructed the jury to punish defendant under section 3737, Revised Statutes, and then the court inflicted additional punishment under section 3734. The court had no authority to render judgment of forfeiture in this case. After defendant is convicted, provision is made for his removal from office, in sections 7127, 7128 and 7129, volume 2, Revised Statutes, 1889.

*Wm. Palmer* for respondent.

(1) The court committed no error in refusing to let witness Twyman answer questions* asked him by defendant on cross-examination in regard to his having testified before the grand jury, etc. *Ball v. Independence*, 41 Mo. App. 469; *Baker v. Shaw*, 35 Mo. App. 611; *Mathias v. O'Neill*, 94 Mo. 520; *State v. Parker*, 96 Mo. 382; Greenleaf on Evidence [14 Ed.], sec. 462; 3 Rice on Evidence, sec. 229. (2) The court committed no error in sustaining the state's objection to the introduction of defendant's evidence offered as to witness Edwards' "general character as a law abiding, orderly man in the community" where he lived. *State v. Raven*, 22 S. W. Rep. (Mo.) 376. (3) The record of the trial shows no ground upon which to base the third point in appellant's brief. The record shows that the conversation between witness Edwards and policeman

Penn took place in the presence of defendant Ragsdale —not in his absence. Also page 7 of this brief. (4) *First.* Instruction number 1 given for the state correctly declares the law. The *gravamen* of the offense charged against defendant was his maliciously ordering and causing the arrest and imprisonment of Edwards and Twyman under color of his office of mayor. If the instruction required any unnecessary findings at the hands of the jury, such error was in defendant's favor and he can not complain. *State v. Stewart,* 90 Mo. 507; *Mangold v. Railroad,* 24 Mo. App. 52. *Second.* Defendant's claim of "fatal error" is swaggering and ill considered. (5) The court properly refused instructions numbers 6, 7, 8, 9, 10 and 11 asked by defendant and correctly declared the law governing the matters in issue by instructions numbers 6, 7, 8 and 9, and others given in the case. The word corrupt was properly stricken out. Section 3732, volume 1, Revised Statutes 1889, specifies several distinct offenses. The first is willful and malicious oppression in office. Some of the others apply to corrupt practices in office. The word corrupt is not appropriate unless the crime grew out of some money transaction. *State v. Pinger,* 57 Mo. 243; *State v. Hein,* 50 Mo. 362; *State v. Gardner,* 2 Mo. 23. (6) The affidavit made by Twyman upon which the information is based is properly verified and certified, and upon its face shows that it is on knowledge of affiant. It fully complies with the statute. R. S. 1889, secs. 4057, 4059. (7) The information states but one cause of action, *i. e.,* of "willful and malicious oppression in office." The specific acts relied upon as constituting the offense in a given case must be alleged in the indictment or information. The rule of criminal pleading is that, if the act creating the offense does not specifically define or describe it, an information or indictment in the language of the statute, is insufficient.

In this case it is necessary to set out in full all acts of defendant constituting the oppression by him as an officer. *State v. Fare*, 39 Mo. App. 112; *State v. Davis*, 70 Mo. 467; *State v. Ferguson*, 29 Mo. 416; *State v. Rockford*, 52 Mo. 199; *State v. Gardner*, 28 Mo. 90; *State v. Prior*, 37 Pac. Rep. (Kan.) 169; 39 Cent. Law Journal, No. 15, Oct. 12, 1894; *Commonwealth v. Mentzer*, 29 Atl. Rep. (Pa.) 720. (8) If the information charges no offense under the statute upon which it is based, and under which defendant was prosecuted, then this section of the statute is without meaning. Was not the cane used by him in furtherance of the execution of this command? "Color of office" means, "an act unjustly done by the countenance of an office, being grounded upon corruption, to which the office is a shadow and color." Black's Law Dictionary, page 222; Bouvier's Law Dictionary, page 335. (9) Judgment was rendered upon the verdict of the jury under section 3737, Revised Statutes, and the court inflicted additional punishment under section 3734, 1 Revised Statutes, 1889. The defendant was charged with one offense, convicted of one offense and the record plainly shows what that offense was and the punishment inflicted.

SMITH, P. J.—The defendant, who, being mayor of the city of Moberly, was tried and convicted on an information based on section 3732, Revised Statutes, charging him with willful and malicious oppression in office, and which is as follows:

"Wm. Palmer, prosecuting attorney within and for the county of Randolph, state of Missouri, informs the court upon the affidavit of Joel K. Twyman, that James W. Ragsdale, on or about the thirtieth day of June, 1893, at the city of Moberly, county of Randolph and state of Missouri, being then and there the mayor

of the said city of Moberly, in said county and state, wickedly intending and contriving to injure and oppress affiant and one A. J. Edwards, did then and there under color of his said office of mayor of said city of Moberly, unlawfully, willfully, maliciously and corruptly order and command one John Penn, a policeman of said city of Moberly, the said Penn in the discharge of his duty as a policeman of said city, being then and there subject to the orders of said James W. Ragsdale, as mayor of said city, to arrest and imprison in the city prison of said city this affiant, and the said A. J. Edwards; and that in obedience to said unlawful, willful, malicious and corrupt order and command of said J. W. Ragsdale, mayor as aforesaid, said policeman, John Penn, did unlawfully arrest and take into custody both affiant and said A. J. Edwards, said J. W. Ragsdale being then and there present; and that while affiant and said A. J. Edwards were so unlawfully held in custody by said John Penn as aforesaid, said James W. Ragsdale, under color of his said office, did unlawfully, willfully and maliciously assault affiant and said A. J. Edwards, without legal cause or excuse, with a large cane, and did unlawfully, willfully and maliciously under color of his said office, then and there disturb the peace of affiant and said A. J. Edwards by cursing them in a loud and angry manner, and by threatening to assault them with said cane, and by applying to them the following vile epithets, in the presence of the said John Penn and divers other persons, in a loud tone of voice, to wit: 'Lock them up, the God damned thieving sons of bitches;' 'get in there, you God damned thieving sons of bitches,' meaning affiant and said A. J. Edwards, which said vile and abusive language said J. W. Ragsdale then and there repeatedly bestowed upon affiant and said A. J. Edwards, and after so assaulting

and insulting affiant and said A. J. Edwards, the said J. W. Ragsdale, mayor of the city of Moberly as aforesaid, without reasonable or justifiable cause therefor, and under color of his said office of mayor as aforesaid, did then and there willfully, unlawfully, maliciously and corruptly imprison and caused to be imprisoned in the city prison of the said city of Moberly, this affiant and said A. J. Edwards for a long time, to wit, for the space of about one hour and a half; the said James W. Ragsdale, mayor as aforesaid, well knowing at the time that he so ordered and commanded the said John Penn, policeman, as aforesaid, to arrest affiant and said Edwards, and imprison them, and at the time of their arrest and imprisonment in said city prison of said city of Moberly as aforesaid, that neither he, the said Jas. W. Ragsdale, nor the said John Penn, policeman as aforesaid, had any legal warrant for the arrest of this affiant and said Edwards, or either of them, and that he, the said Ragsdale, well knew that this affiant and the said Edwards, nor either of them, had committed any violation of law or offense against the laws of the said city of Moberly, or the state of Missouri, and that they were at said time in the peace of said city and state, and unoffending against the peace and dignity of the state.                    WM. PALMER,

"Prosecuting Attorney."

The defendant, who has appealed, assails the judgment on several grounds which we shall now proceed to notice. He objects that the trial court erred in refusing to permit him on the cross-examination of the witness Twyman to inquire, *first*, whether he testified before the grand jury; *second*, whether he was sent for to make the affidavit on which the information was based, and, *third*, where he first went when he got to Moberly, and whether he was advised by ot' 'rs to prosecute the defendant. It is not perceived that this rul-

State v. Ragsdale.

ing was erroneous. These questions did not, from their character *per se*, show that it was thereby sought to elicit testimony that was pertinent to any material issue of fact that had been thus far developed during the trial. Any response that could have been given by the witness would have been immaterial so far as anything appeared before the court. And the record does not disclose that the defendant stated to the court what the purpose of the inquiries was, whether to lay the foundation for the impeachment of the witness, or for some other legitimate purpose. Of course, if it was the purpose to show that his testimony before the grand jury was different from that which he had given at the trial, it was competent to show this by a member of the grand jury who heard him testify before that body. R. S., sec. 4086; *State v. Parker*, 96 Mo. 382. But how was the court to know that the response of the witness would be material testimony unless aided by the disclosures of counsel making the inquiries at the time the objections were interposed thereto.

The rule has long been observed in the appellate courts of this state to the effect that they will not reverse a judgment for refusal of the trial court to admit evidence if it can not *determine from the record* whether the evidence is material or not. *Ball v. Independence*, 41 Mo. App. 469; *Jackson v. Harden*, 83 Mo. 175; *Bank v. Aull*, 80 Mo. 199; *Kraxberger v. Roiter*, 91 Mo. 404. We can not tell *from the record* whether it was the purpose of defendant to lay the foundation for the impeachment of the witness, or not; and so we can not determine, after all, whether such rejected testimony is material or not, and therefore we can not, under the rule just referred to, condemn the ruling of the trial court. It is, of course, true that a witness may be impeached by proof that he has made statements out of court contrary to what he has testified to

at the trial, but before this can be done it is generally necessary to ask him as to the time, place and person involved in the supposed contradiction. The questions were too general and indefinite to be allowed under this rule.

Again, suppose the witness did consult the prosecuting attorney and others as to the propriety of making the affidavit on which to base the information; or, suppose other persons advised the same, what of it? If the answers to the questions asked of the witness had proved these facts, would they have been material in any way? Certain it is that they could not have had the effect to shake his credit by injuring his character, or to in any respect humiliate or disgrace him. In no view of the matter which we are able to take can we find fault with the ruling of the trial court in that regard.

The defendant further objects that the trial court erred in sustaining the objection of the prosecuting attorney to the testimony offered as to the witness Edwards' "general character as a law abiding, orderly man in the community" where he lived. The rule has been long established in this state that it is proper to extend the inquiry not only to the general reputation of a witness for truth and veracity, but to the reputation of a witness in respect to his general moral character. *State v. Raven*, 115 Mo. 420; *State v. Miller*, 71 Mo. 590; *State v. Grant*, 76 Mo. 236; *State v. Rider*, 95 Mo. 486; *State v. Shroyer*, 104 Mo. 444. But it is quite obvious that the inquiry here is not comprehended within this rule, and therefore it was not proper to allow it to be made.

The witness Edwards in detailing the circumstances of his arrest, stated what he said to the policeman at the time he was arrested by him under the order of the mayor. It is objected that this testimony is prejudicial to defendant. It appears that defendant was

then present, and if he were not, the statement of the the officer to witness that he would have to arrest him and the response and inquiry of the witness then made as to what he had done to cause his arrest, was part of the *res gestæ*, and properly admitted on that ground, if upon no other.

The defendant further objects that the first instruction given by the court for the state is erroneous, but it is a sufficient answer to this to state that the record nowhere shows that there was any objection or exception taken by defendant to the action of the court in giving this instruction. In the motion for a new trial the giving of instructions for the state is not made one of the grounds therefor. We can not, therefore, notice this point of the defendant's objection.

The defendant further objects that the trial court erred in refusing to give his instructions numbered 6, 7, 8, 9, 10 and 11, and in giving those numbered 6, 7, 8 and 9 in a modified form. It appears by the record that to the action of the court in the giving of the above instructions as modified, no exception was taken, or if so, none preserved by the bill of exceptions, and hence we are without power to review the action of the court in that respect.

The sixth instruction asked by defendant and refused by the court declared that it is admitted that the defendant was, at the time of the commission of the offense charged in the information, mayor of the city of Moberly, and as such mayor it was his duty to be active and vigilant in enforcing all laws and ordinances for the government of the city, and that he had the superintending control of all the officers and affairs of the city, and the laws of said city imposed upon him the duty to take care that the ordinances of the city, and the state laws relating to the city are complied with; "and if you find and believe from the evi-

dence, after a careful consideration of all the facts and circumstances proved, that defendant in what he said and did at the time complained of in the information, was said and done by him under an honest and conscientious belief that he was simply discharging his duty as mayor of the city of Moberly, then you will find him not guilty, although you may further find and believe from the evidence, that said Twyman and Edwards were guilty of no offense against the laws of the city of Moberly, or the state of Missouri, and that said Ragsdale did wrong in ordering them arrested and imprisoned; for a public officer, although he commit a gross mistake, and innocent parties suffer thereby, is not responsible criminally therefor, unless he acted from willful, malicious and (corrupt) motives.''

The court gave on its own motion an instruction, without objection, which was word for word the exact counterpart of the foregoing, except that it omitted the word ''corrupt'' which appears in the latter. The court refused defendant's seventh instruction, one given likewise without objection on its own motion in lieu thereof, which was not different, except it also omitted the word ''corrupt.'' It thus appears that these two instructions were refused for the reason only that they proceeded upon the theory that the acts charged in the information constitute no offense unless done with a corrupt motive. The language of the statute on which the information is founded is ''that every person holding any office of public trust who shall be guilty of willful and malicious oppression, partiality, misconduct, or abuse of authority, in his official capacity, or under color of his office * * * shall be deemed guilty of a misdemeanor.'' R. S. sec. 3732. It is thus seen that the ingredient of corruption does not enter into every act of oppression, misconduct, or abuse of authority by an officer in his official capac-

ity and under color of his office as denounced by the statute.

The word "corrupt" or "corruption" is variously defined by lexicographers and law writers. "Corrupt" is defined in Anderson's dictionary of Law to mean "to do an act for unlawful gain." And the same author defines the word "corruption" to be, "An act done with intent to gain advantage not consistent with official duty and the rights of others; something forbidden by law, as certain acts by arbitrators, election or other officers, trustees; a champertous contract; a contract of usury." In 2 Century Dictionary, 1282, "corrupt" is defined to be "dishonest, without integrity, guilty of dishonesty, involving bribery, or a disposition to bribe or be bribed; as corrupt practices, a corrupt judge."

The evidence in this case shows that the defendant, the chief officer of a city, who had control of its policemen, without cause, arbitrarily ordered a policeman to arrest and imprison two unoffending citizens, and while so under arrest and in their defenseless condition, he not only used towards them the most profane, opprobrious and insulting language, but wantonly assaulted them with a walking cane. That his acts were willful and malicious, is not disputed; but it is contended that such acts must also be prompted by a corrupt motive. There may be, and no doubt are, cases like the present where, to the ingredients of willfulness and malice is added that of corruption. If the acts here proved were shown to have been prompted by some dishonest or knavish motive, as for example, such as bribery or other unlawful gain, or some dishonest benefit or advantage to the officer or to some one in favor with him, or to affect the result of a city election, and the like, then such acts of oppression and misbehavior of the officer would not only be will-

ful and malicious, but also corrupt. But to say that such acts, though willful and malicious, do not constitute a misdemeanor under the statute unless also corrupt, we think is absurd.

No case has been cited where the contention of the defendant in this respect is countenanced. Certainly none of the cases cited from the reports of the supreme court of this state bear the slightest resemblance to this. That of *State v. Gardner*, 2 Mo. 22, was where a justice of the peace, to the great perversion of public justice, issued a summons to a constable commanding him to summon one Spencer to appear before the justice "to answer a pretended demand in favor of one black Socker, a negro man slave, etc." It has been held that the indictment should charge that the act of issuing the summons should have been done knowingly, willfully and corruptly. *State v. Hein*, 50 Mo. 362, was where the justices of the county court, under color of their officer as such, drew and ordered to be drawn on the treasurer of the county a warrant," etc. The indictment was based on a section of the statute then in force (Wag. Stat. 487, sec. 16) whose language is identical with that of the present statute under which the prosecution was begun in this case. It has been held that the indictment should show such acts as would amount to the imputed crime independent of the word willful; and to make this out it should charge the act to have been done knowingly and corruptly, and the act should be alleged to be willful. *State v. Piner*, 57 Mo. 243. Where the indictment against the justices of the county court was framed under the act of March 20, 1872, which provided that if any member of a county court should knowingly vote for the appropriation, or disposition of any money or property belonging to the county for any purpose not directed by law, such person so voting

such illegal appropriation or disposition of such money or property should be deemed and taken to have feloniously embezzled and converted to his use, etc., the court, quoting with approval sections 2520, 2521 of Wharton's Criminal Law, held that the act must have been done knowingly, and actuated by some dishonest and corrupt motive.  As to the charging words of the indictment, description of the offense, the ruling in the two preceding cases was followed. *State v. Kite*, 81 Mo. 97, was an indictment against the justices of the county court for having unlawfully granted a dramshop license.  It was ruled that the indictment should aver that the license was granted by them as such judges, willfully, knowingly, or for an improper motive.  And a similar ruling was made in *State v. Newkirk*, 49 Mo. 85.

*Boyd v. Commonwealth*, 77 Va. 52, was where the indictment charged that the defendant, being one of the judges of an election at a voting place, in the execution of his office, then and there with opprobrious language and menaces, did unlawfully, corruptly and willfully prevent Moon and Fitzgerald from qualifying and acting as judges of the said elections, etc.  The law under which it was drawn provided that if any officer on whom any duty is enjoined by law relative to general or special elections should be guilty of any willful neglect of such duty, or of any corrupt conduct in the execution of the same, should be deemed guilty of a misdemeanor.  It was held by the court that in an indictment against an officer for corrupt misbehavior in office, it is necessary that the act imputed to him as misbehavior be distinctly and substantially charged to have been done with a corrupt motive.  There was nothing in the indictment to show that the defendant (plaintiff in error) acted corruptly, however unlawfully he may have acted.

In all of these cases which are cited and relied on by defendant, the ingredient of corruption as previously herein defined is one of the essentials of the offense. This ingredient is not found in the present case. The defendant was not influenced by corrupt motives in the commission of the acts of oppression and misbehavior for which he was prosecuted and convicted. We must think that the instructions of the defendant as given in their modified form were proper, and as asked, containing the word "corrupt" were improper.

The court, on its own motion, refused the defendant's instruction defining malice, but gave one of its own motion embodying the same definition. The court, by its instructions, fully defined the meaning of the terms, "malice" and "willful." These definitions are in accord with that announced by the supreme court of this state in numerous cases, which need not be cited here.

The defendant further objects that the court further erred in refusing his tenth instruction, which declared that the punishment for the offense charged was disqualification from holding office under the constitution and laws of this state, and from voting at any election. This was properly refused. While it correctly stated the legal effect of a conviction of the offense charged, it was not a matter for the jury, but for the court. The function of the jury was to pass on the guilt or innocence of the defendant under the information and the evidence, and, if guilty, to assess his punishment as provided in section 3737. It was the duty of the court, in its judgment, to declare the statutory effect of such a conviction.

The defendant further objects that the court erred in refusing his eleventh instruction, which informed the jury that the policeman was not obliged to obey an

order of the mayor to imprison the parties if he knew they were guilty of no offense. This instruction tendered an immaterial issue. It made no difference that the officer making the arrest knew that the parties were not guilty of any offense so far as the defendant was concerned, since he instigated and commanded the arrest to be made. The knowledge or wrong of the police officer was no shield to defendant under the circumstances. Whether this officer knowingly permitted himself to become an instrument in the hands of defendant to wreak his malice on the arrested parties was immaterial and unimportant. The instruction was rightfully refused.

The affidavit upon which the information is based is, we think, properly verified, and upon its face shows that it is on the knowledge of the affiant, and, therefore, sufficiently complies with the statutory requirement. R. S., secs. 4057, 4059.

The defendant further complains that the information charges four distinct statutory offenses in one count punishable under different statutes, and that, therefore, it is bad for duplicity. We do not think this complaint is well grounded. The information clearly charges but one offense, to wit, willful and malicious oppression in office.

The several specific acts relied on as constituting the offense are alleged in the information with sufficient particularity to meet the requirements of the rule of criminal pleading, which is to the effect that if the statute creating the offense, as is the case here, does not specifically define or describe it, then the information or indictment must set out in full all acts of defendant constituting the offense. *State v. Fare*, 39 Mo. App. 112; *State v. Davis*, 70 Mo. 467; *State v. Ferguson*, 29 Mo. 416; *State v. Rockford*, 52 Mo. 199; *State v. Gardner*, 28 Mo. 90; *State v. Prior*, 37, Pac. Rep. (Kan.)

169, (see Cent. Law Jour., vol. 39, No. 15, Oct. 12, 1894; *Commonwealth v. Mentzer* 29, Atl. Rep. (Penn.) 720, (see Cent. Law Jour., vol. —, No. — and date).

The defendant further complains that the information is bad for the further reason that it does not charge that the several acts of the defendant were knowingly, wilfully and corruptly done, and from an improper motive. From what has been already stated in a preceding paragraph, it must follow that this complaint is not well founded. We think that if the information charges the offense in the language of the statute with proper specifications of the acts constituting the same, more is not required in a case of this kind.

The defendant's final complaint is that the trial court erred in rendering judgment that defendant forfeit his office. We can not sustain this complaint. The court instructed the jury that if they found the defendant guilty they should assess his punishment at a fine not exceeding $500, or by imprisonment in the county jail not exceeding one year, or by both such fine and imprisonment. This was in conformity with the provisions of section 3737, Revised Statutes. The jury by their verdict assessed the defendant's punishment at a fine of $50. The judgment and sentence of the court was that inasmuch as the defendant "has been found guilty by the verdict of the jury of the crime of willful and malicious oppression in office, as charged in the information in this cause, and his fine fixed by said jury in their verdict at the sum of $50 * * it is adjudged by the court that the defendant pay a fine of $50 and also the costs of the prosecution, and and that he stand committed until said fine and costs be paid, or he be otherwise discharged in the due course of law. And that for the offense charged in the information in this cause whereof he is convicted, he for-

feit his office of mayor of the city of Moberly," etc. Section 3734, Revised Statutes, provides that every officer who shall be convicted of any official misdemeanor or misconduct in office, or of any offense which is by this or any other statute punishable by disqualification to hold office, shall, in addition to the other punishment prescribed for such offenses, forfeit his office. The defendant was convicted of an offense mentioned in section 3732, as has already been stated. And in section 3734 it is provided that every person who shall be convicted of any of the offenses mentioned in any of the preceding sections, which, of course, includes section 3732, shall forever be disqualified from holding any office of honor, trust or profit under the constitution and laws of this state. The offense for which defendant was convicted, being punishable by disqualification to hold office, therefore the judgment of forfeiture was proper.

Sections 7127, 7128 and 7129, Revised Statutes, provide for the removal of persons from office for the causes therein mentioned, upon complaint of the prosecuting officer. The procedure for the trial and removal of an officer under these sections is analogous to that of common law by *quo warranto*. It is a different proceeding from that provided when an officer has been guilty of willfull and malicious oppression in office as defined in the section of the statute which we have already referred to. One is a criminal proceeding where the effect of the conviction is to disqualify him from holding office and to forfeit that which he occupies at the time of the commission of the crime; the other is a civil proceeding and nothing more. It has no relation to or connection with the criminal proceeding; nor is it necessary to resort to a proceeding under the former to

give effect to the conviction under the latter.   The two statutes and the proceedings authorized by them are entirely independent of each other.

The defendant seems to us, from a pretty thorough exploration of the record, to have been fairly tried and rightly convicted; and so we must affirm the judgment of the circuit court.   All concur.