THE STATE OF MISSOURI *ex rel.* JAMES W. RAGSDALE,
Appellant, v. N. E. WALKER *et al.*, Coun-
cilmen, etc., Respondents.

### Kansas City Court of Appeals, December 14, 1896.

1. **Municipal Corporations**: THIRD CLASS CITIES: IMPEACHMENT
OF MAYOR: STATUTE. By section 11 of the Act of April 19, 1893,
a third class city council may resolve itself into a court of impeach-
ment and try the mayor and under the seventh clause of that act can
elect a president *pro tempore* to preside.

2. ———: ———: COURT OF IMPEACHMENT: ORDINANCE: STATUTE.
Under the act of April 19, 1893, it is not necessary for the common
council to pass an ordinance prescribing the form of procedure in
impeachment cases but may proceed directly under the statute which
is self-executing.

3. ———: REMOVAL OF OFFICERS: COMMON LAW. At common law
officers of corporations could be removed for the following causes:
    (1) Offenses not immediately relating to the office but in them-
    selves so infamous as to render the offender unfit, of which
    he has been duly convicted in a court of law.
    (2) Such as are only against his oath and duty and amount to a
    breach of the condition annexed to his office, which offenses
    the corporation itself may try.
    (3) Offenses of a mixed nature being not only against official
    duty but also indictable at common law. *Quaere:* Whether
    conviction of such offenses should be in a court of·justice.

4. ———: ———: AMERICAN DOCTRINE. In this country the miscon-
duct for which an officer may be removed must be found in his acts and
conduct in the office from which he is removed and must constitute a
legal cause of removal and affect the proper administration of his
office.

5. ———: ———: CHARGES: NOTICE. In this state general power to
remove a municipal officer elected for a definite term confers only
power to remove for cause, by which is meant upon charges, specifi-
cations, notice, and trial.

6. ———: ———: NOTICE. In proceeding to remove an officer he is
entitled to personal notice of the proceeding and the time of trial.
Though the charges may not be set out in detail, the notice should
contain the substantial fact that a proceeding to remove is intended.
In the absence of statute or ordinance, analogies of ordinary proceed-
ings of courts may be followed.

*Appeal from the Randolph Circuit Court.*—HON. JOHN
A. HOCKADAY, Judge.

AFFIRMED.

*Ben. T. Hardin* for appellant.

(1) If appellant could be removed by the council
at all, it must have been "for cause" which in legal
intendment means upon sufficient charges, "notice
thereof and a hearing." *State v. Walbridge*, 62 Mo.
App. 162; *State v. Brown*, 57 Mo. App. 99; *State v.
St. Louis*, 90 Mo. 19; *State v. Walbridge*, 119 Mo.
383. (2) If any charges were ever filed against
appellant, the return made by respondents to the writ
utterly fails to show such fact, and the return also fails
to show any notice to defendant, or a return to such
notice. *State v. Walbridge*, 62 Mo. App. 162; *State v.
Brown*, 57 Mo. App. 199; *State v. St. Louis*, 90 Mo.
19. (3) Under the act of April 19, 1893, an elective
officer is removed by the mayor and council, "sitting
as a court of impeachment." Such elective officer
must be removed "in like manner;" that is, by the
mayor and council, sitting as a court of impeachment.
But if two thirds of all the members of the council
vote for removal, it can be done without regard to the
mayor's approval. Hence, I claim that there is no
provision in said act, which is the charter of the city
of Moberly, whereby the mayor of said city may be
removed by the council, sitting as a court of impeach-
ment, without the mayor. Section 7 emphatically
provides that "the mayor shall be president of the
council." I take the position, therefore, that the
mayor could be removed only by virtue of the provi-
sions of the general statutes. Ch. 120, R. S. 1889.
(4) Section 11, above referred to, also says: "The

.council may pass ordinances regulating the manner of impeachment and removals." This the city council has never done. They resolved themselves into a high court of impeachment, without any authority whatever so to do. The word may is to be held as meaning shall, whenever the statute requiring construction relates to public officers. *State v. Laughlin*, 73 Mo. 443. (5) A statute authorizing the removal of an officer for cause, means a legal cause, and not any cause which the council may deem sufficient. It must be a cause relating to and affecting the administration of the office, and attacking the qualifications of the officer and showing that he is not a fit person to hold the office. *State v. Duluth*, 53 Minn. 238; *Speed v. Council*, 98 Mich. 360.

*Will A. Rothwell* for respondents.

(1) The city council of the city of Moberly had jurisdiction under the state law governing cities of the third class to impeach and remove from office "any elective officer" of the city. This includes the mayor. He is an elective officer. Moreover, at common law municipal corporations as a matter of existence had the right of amotion. That right remains unless positively removed by plain statute. Laws of Missouri, 1893, p. 68, secs. 5, 11; 1 Dillon on Municipal Corporations [3 Ed.], p. 267, sec. 240; 1 Beach on Pub. Corp., page 204, and cases cited in note. The proceedings of the city council were regular in every respect. Under the facts shown by the record appellant can not complain of any omission of legal requirement on the part of the city council. Every necessary condition and preliminary was complied with and observed. 1 Beach on Public Corporations, p. 206, secs. 193, 194; 1 Dillon on Municipal Corporations [3 Ed.], pp. 276,

State ex rel. v. Walker.

278, secs. 254, 255; High's Ext. Leg. Rem., pp. 69, 70. Even if Laws of Missouri, 1893, page 68, section 11, should be held not to give the city council power to remove the mayor from office for cause shown, yet the city council still has that power under the common law. "The power to remove a corporate officer from his office for reasonable and just cause is one of the common law incidents of all corporations. * * * For the sake of order and government the power is incidental." 1 Dillon on Municipal Corporations [3 Ed.], sec. 240, etc.; *State v. Walbridge*, 119 Mo. 394, *loc. cit.; Richards v. Clarksburg*, 30 W. Va. 502, 503, 504; Am. and Eng. Ency. of Law, art. "Amotion," sec. 2, p. 557, and note; Am. and Eng. Ency. of Law, art. "Pub. Officers," p. 562*a*. The city council unquestionably had the power, either from statute or the common law to impeach and remove appellant. As to the manner of impeachment it is not doubted that under the authority of Laws of Missouri, 1893, page 67, section 11, the city council could have passed ordinances to regulate the method of removal. But this was not a necessity. Where the power of amotion exists the only requirements necessary to its exercise are "a proper notice to the officer of charges preferred and full opportunity for him to be heard." These conditions were fully met in the case at bar. *State v. Walbridge*, 119 Mo. 394, and cases cited; *State v. City of St. Louis*, 90 Mo. 19.

SMITH, P. J.—A writ of *certiorari* was sued out of the circuit court in this case to test the validity of a resolution of the city council of the city of Moberly removing the relator from the office of mayor.

The return to the writ upon which judgment was given against the relator shows that the city attorney of said city, in February, 1894, presented to the city council of said city a verified information, containing

VOL. 68 app—8

certain charges and specifications of official miscon-
duct of the relator, while he was the duly elected,
qualified, and serving mayor of said city—a city of the
third class, organized under the statutes of this state,
the pith of which may be stated to be as follows, to
wit: "1. Willful, unlawful, and malicious oppression,
etc., of Edwards and Twyman under color of office of
mayor. 2. Willful, unlawful, and malicious failure
and refusal to sign certain warrants for John E. Penn,
policeman. 3. Willful, unlawful, and malicious failure
and refusal to sign certain warrant and ordinance for
paying interest on portion of the public debt of the city
of Moberly. 4. Willful, unlawful, and malicious
failure and refusal to sign certain warrant for Will A.
Rothwell, city attorney. 5. Because said Mayor
Ragsdale having been convicted and judgment entered
against him removing him from office, in the circuit
court of Randolph county, Missouri, on the fourteenth
day of February, 1895, had thereby forfeited his
right to hold the office of mayor and become disquali-
fied therefor." *State v. Ragsdale*, 59 Mo. App. 590.

It further appears from said return that the relator
was, on the seventeenth day of February, 1894, duly
served by the city marshal of said city with a copy of
said charges and specifications, and that on the nine-
teenth day of February following the relator was
notified in writing that the said city council had set
and appointed February 23 of said month then next
following, at 7 o'clock P. M., as the time, and the
council chamber in the city hall building in the city of
Moberly, as the place, for hearing and trying the
charges preferred against him as mayor, a copy of
which had been served on him theretofore, on the
seventeenth day of February, 1894.

It further appears from said return that on the
twenty-third day of February, 1894, pursuant to a

previous adjournment, the said city council met, the president *pro tem.* presiding, when all the twelve councilmen were present, and that upon motion the said council resolved itself into a court of impeachment for the purpose of hearing and trying the charges and specifications preferred against the relator mayor, etc., and that the clerk of the circuit court of the county administered the oath to each of said councilmen, that while sitting as a court of impeachment they would truly and impartially hear and determine the charges preferred by the city attorney of said city against the relator mayor, etc.

It further appears from said return that the said president *pro tem.* of the council, on motion, was made presiding officer of said court of impeachment, and that Mr. Little was made clerk thereof; and that thereupon the city attorney being called upon to answer whether or not he was ready to proceed with the trial and investigation of the said charges answered in the affirmative and the said relator being likewise called upon appeared in person and by attorney and answered said inquiry in the negative and requested a continuance for the purpose of procuring the attendance of witnesses and otherwise preparing his defense, and that accordingly the hearing and trial of said charges were continued until the twenty-seventh day of February, 1894; that afterward, on the said last named date the council met pursuant to adjournment, when the relator, by his attorney, filed a demurrer to the said charges, which was overruled; that the relator's attorney thereupon refused to enter any plea whatever. The court, after hearing the charges, notice, and return read, proceeded to hear testimony in support of such charges. At the conclusion of all the testimony introduced, each charge and specification was read and the council, on motion, proceeded to vote upon the relator's guilt

or innocence thereunder, the vote being by ayes and noes, which resulted in a finding of guilty on each of said charges.

It further appears that thereupon the said council unanimously adopted a resolution declaring the said office of mayor of said city to be vacant. The relator objects that there is no provision of the act of April 19, 1893, relating to cities of the third class (Sess. Acts, 1893, p. 65), which is, in effect, the charter of the city of Moberly, authorizing the council of that city sitting as a court of impeachment, to remove the mayor.

*MUNICIPAL corporations: third class cities: impeachment of mayor: statute.*

Section 11 of said act provides that: "The mayor may, with the consent of a majority of all the members elected to the city council, remove from office, for cause shown, any elective officer of the city. Such officer being first given opportunity, together with his witnesses, to be heard before the council, sitting as a court of impeachment. Any elective officer may, in like manner, for cause shown, be removed from office by a two thirds vote of all the members elected to the city council, independently of the mayor's approval or recommendation." It will thus be seen that the terms of this section are quite comprehensive, for it provides that any *elective officer* may *in like manner*, for cause shown, be removed, etc. By the terms, "in like manner" is meant such officer first being given an opportunity, together with witnesses, to be heard before the council sitting as a court of impeachment, as provided in the first clause of the section and this may be done independently of the mayor's approval or recommendation. So that these terms are restricted in their reference as just stated. By the first clause the mayor may remove for cause, with the consent of a majority of the council; while, by the second, the council "in like manner" may remove by two thirds

vote, independently of the mayor. The council have conferred upon them by the said section the power of removal by a two thirds vote in spite of the mayor, and an exertion of this power is not dependent upon his approval for its validity.

The seventh section of the act, it is true, provides that the mayor shall be president of the council, but the nineteenth section provides for the election of a president *pro tem.*, who shall, in the absence of the mayor, preside at the meetings of the council, so that the council may meet and transact business as well when the mayor is absent as when present. The acts of the council, whether assembled for the performance of its ordinary legislative duties, or for those of a court of impeachment, are, when presided over by the president *pro tem.* as valid as if presided over by the president. Where the record shows, as in this case, that the council was presided over by the president *pro tem.* at the time of the adoption of the resolution in question, we must presume the absence of the president. The record does not, therefore, in this regard, disclose any irregularity in the proceeding, or defect of jurisdiction.

II. It is contended by the relator that since the council had not passed an ordinance regulating the manner of impeachment and removals, as authorized by said section 11, it could not resolve itself into a court of impeachment. It is a sufficient answer to this to say that by the provisions of said section 11 is conferred the power to remove all elective officers for cause, and yet, while there are no means or measures whereby removals may be accomplished as therein provided, or by any ordinance passed in pursuance thereof, yet the grant of power by the section carried with it all necessary incidental powers, without which the grant would be ineffectual. The general rule is that where a grant

of power is given, all the means necessary to effectuate the power pass as incidents to the grant. *State v. Walbridge*, 119 Mo. 383; *Ex parte Marmaduke*, 91 Mo. loc. cit. 262; Sutherland on Stat. Const., sec. 391; Beach on Public Corporations, sec. 1314.

Here where the power of removal for cause is conferred and no notice is required to be given to the officer proceeded against, the law will imply that such notice be given. *Laughlin v. Fairbanks*, 8 Mo. 370; *Wickham v. Page*, 49 Mo. 526; *Brown v. Weatherby*, 71 Mo. 152. And what the law will imply is as much a part and parcel of a legislative enactment as though set forth in terms. *State v. Board*, 108 Mo. 235; Sutherland on Stat. Const., sec. 334. Therefore the section of the statute conferring the power of removal for cause needs no ordinance to render it operative—the means to effectuate the power conferred passed as a necessary incident. It is a self-executing statute in this respect.

*court of impeachment: ordinance: statute.*

III. The relator further insists that the charges preferred against him, the nature of which have already been very briefly referred to, even if supported by evidence, are insufficient in law to justify his removal. According to the decision of Lord MANSFIELD in *Rex. v. Richardson*, 1 Burr, 517, there are three sorts of offenses for which one officer or corporator may be discharged. *First.* Such as have no immediate relation to his office, but are themselves of so infamous a nature as to render the offender unfit to execute any public franchise. *Second.* Such as are only against his oath and the duty of his office as a corporator and amount to breaches of the tacit condition annexed to his franchise or office. *Third.* Offenses of a mixed nature, as being an offense not only against the duty of his office but also a matter indictable at the common law. In offenses of the first

*: removal of officers: common law.*

class the removal can only be made after there has been a previous conviction in a court of law. In offenses of the second class, the corporation may try, and if the charge is established, remove without any previous or other proceeding in the courts. Offenses of the third class, the English judges have differed on the point whether the officer may or may not be removed before conviction in a court of justice. The Pennsylvania cases adopt the classification of Lord MANSFIELD and assert the inherent power of corporations to expel for offenses falling within any of the three classes. See cases cited in note 1 to section 251, Dillon's Municipal Corporations.

It is very well settled in this country that the misconduct for which an officer may be removed must be found in his acts and conduct in the office —: —: Amer- from which his removal is sought and must ican doctrine. constitute a legal cause of removal and affect the proper administration of his office. *Speed v. Common Council*, 98 Mich. *loc. cit.* 364· The cause must be one which specially relates to and affects the administration of the office and must be restricted to something of a substantial nature directly affecting the rights and interests of the public. The cause must be one touching the performance of his duties showing that he is not a fit or proper person to hold the office. In the absence of a statutory specification, the sufficiency of the cause should be determined with reference to the character of the officer and the qualifications necessary to fill it. *State v. Common Council*, 53 Minn. 238; *State v. Love*, 39 N. J. Law, 14; *State v. McGarry*, 21 Wis. 496; *People v. Thompson*, 94 N. Y. 451.

The specifications of the alleged causes should be formulated with such reasonable precision and detail as shall inform the incumbent what dereliction of duty is urged against him. There should be a statement of

the charges with specification of facts constituting a sufficient cause for removal, sufficiently distinct to apprise the incumbent of the grounds upon which the charges are founded.´ *State v. Coalbridge,* 62 Mo. App. *loc. cit.* 164; *Andrews v. King,* 77 Mo. 224; *People v. Thompson, supra;* Dillon on Mun. Corp., sec. 252, and cases there cited.  And it was well settled in this state that a general power to remove a municipal officer —:—: charges: elected for a definite term confers only notice.  the power of removal for cause, by which is meant upon charges, notice, and trial.  *State v. Brown,* 57 Mo. App. 199, and cases there cited.  That the sufficiency and reasonableness of the cause of removal are questions for the courts have been settled since *Baggs* case reported in 11 Coke, 93 d; *State v. Council,* 53 Minn. *supra;* Dillon, Mun. Corp, sec. 252.  The charges and specifications, when tested by the principles just adverted to, were, we think, sufficient to apprise the relator of the accusations which he was called upon to meet.

IV.  As to the objection that the notice is insufficient, it may be observed that in a proceeding to remove, the incumbent is entitled to personal notice of the proceeding against him and of the time when the trial body will meet.  It is not necessary that the notice set out the charges in detail, but it should contain the substantial fact that the proceeding to remove is intended.  The analogies of the ordinary procedure of the courts of the state, in the absence of statute or ordinances, may be followed respecting —:—: notice. such detail as notice, mode of service, and the like:  Dillon on Mun. Corp, sec. 254, and cases cited.

By reference to the notice, the substance of which has been previously stated, it will be seen that it contains every essential required by the preceding stated

rule. We have no doubt that the city council had jurisdiction in the premises, and since its proceedings seem to have been regular in every essential particular, there can be no ground upon which any reviewing court would be authorized to quash the same.

The judgment of the circuit court upholding the proceeding will accordingly be affirmed. All concur.